## OLIVER v. WHITE.

1. The act of 1870 (14 *Stat.* 380), allowing an exemption of personal property to the head of a family, whether he owns a homestead or not, was not in conflict with the constitution of 1868.
2. *Quere.* Are type, press and printing material, tools within the meaning of that word as used in the homestead clause of the constitution?
3. An exemption cannot be claimed as against an execution for city taxes, even though no certificate that it was issued for such an obligation be endorsed on the process.
4. A sheriff is not liable in damages for levying on property exempted under the provisions of the constitution and the homestead acts. The claimant must demand the right given him by the constitution.

---

Before KERSHAW, J., Charleston, July, 1881.

This action was commenced April 28th, 1880, for damages for a levy on defendant's property under an execution issued by the city court of Charleston, in February, 1879. The complaint alleges that the execution was "issued out of the city court for a license, in 1878," and that the "said material had been laid off and assigned to plaintiff as a homestead, in 1877, in the suit of *McCoull, Sullivan & Co.* against *W. J. Oliver.*" At the trial, according to the brief, "the plaintiff introduced the assignment of homestead in the last-mentioned case," and proved, by the

deputy sheriff of Charleston county, that it was taken from the record of that case in his office. The terms of this assignment are not given. Other matters are stated in the opinion.

In granting the non-suit, the Circuit judge said:

This execution, exceedingly irregular on its face, is produced here by the plaintiff, who complains that certain property was levied on by the defendant, who was then the sheriff of the city of Charleston, and was charged by the terms of this execution with carrying it into effect by the seizure of the defendant's property. This property was seized by the defendant, and the plaintiff claims that it was exempt from the seizure by the terms of the homestead act and the laws passed in pursuance thereof by the legislature of the State.

It was generally conceded, until quite recently, that these acts of the legislature, although different from the constitution, were valid, and they were universally practised upon up to the time of the recent decision, which has been cited here. But those decisions have declared that the powers of the legislature did not extend so far as to deal with the matter of exempting property from levy and sale by execution, because the legislature had attempted to legislate upon that subject and had lost all legislative powers. They had no power to legislate beyond the declarations of the constitution. It is generally considered unfortunate that these views of constitutional law should prevail, denying to the legislature an exercise of power, from time to time, when not prohibited by the constitution from such legislative action.

It used to be considered that all the rights and privileges of legislation proper to legislative bodies, and not denied by the constitution, could be exercised by the legislature. But that is not the character of the instrument under which we are now living, and the Supreme Court has so construed the constitution, especially in regard to this matter, much against the will of the legislature of the State. However much it is to be regretted, I am bound by those decisions, and I suppose that the Supreme Court, which pronounced the decisions, regretted it as much as I do, that those who framed the constitution did not protect the man who owned a little personal property and no real estate. But they did not so provide. The last legislature passed an

amendment to the constitution, which makes these humane provisions of law applicable to the poor landless man, as well as to those having large landed estates. But this has no reference to this case. It cannot be retroactive in its effects. The claim, therefore, that this property was exempt by the homestead is concluded by the decisions cited before the court.

It is hardly necessary for me to say anything about the construction of the word "tool," and if it rested on the Massachusetts case, I would, by no means, be governed by it.

Something has been said that this is a claim for taxes, and though it has assumed the form of an execution, yet I think that upon that ground the property would not be exempt from liability. I don't know that the homestead is exempt from taxation. The municipal power is only delegated power. Its taxation is State taxation, delegated by the State to the city administration. No abuse of the process has been shown. No action of the deceased sheriff, beyond that which the execution required him as a matter of duty to perform, is shown. ·The plaintiff is, therefore, without status in court. The non-suit is granted.

*Mr. W. M. Thomas*, for appellant.

*Mr. G. D. Bryan*, contra.

November 14th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Alonzo J. White was sheriff of Charleston, and as such officer was instructed to collect an execution of the city council of Charleston against W. J. Oliver, for $119.75. In the discharge of this duty he levied upon certain printing material, type, &c., and closed up the printing office, known as the *Democrat* in the city, belonging to W. J. Oliver, the defendant in the execution. The office seems to have been closed for several weeks, and then the execution being paid by Mrs. Oliver, the levy was released and the property returned. This action was brought by the plaintiff, W. J. Oliver, against Alonzo J. White, the sheriff, for damages alleged to have been sustained by the suspension of his business as editor, caused by the levy aforesaid.

The complaint alleged that the levy was illegal for the reason that, being the head of a family, he was entitled to homestead in the type and printing material, which, as "tools," were exempt by the constitution from levy and sale. The sheriff answered that he made the levy in the discharge of his official duty; that the property was restored as soon as the execution was paid, and that Oliver, the defendant, was not entitled to claim the type and printing press, as homestead. After he answered, but before trial, Alonzo J. White died, and Blake L. White administered upon his estate, and in some way the case was revived against him as administrator.

After the plaintiff closed his evidence, the defendant's attorney moved for a non-suit, which was granted by Judge Kershaw, who held that W. J. Oliver was not entitled to claim homestead in the printing material, for the reason that the constitution, as recently construed, did not allow homestead in personal property, except as an incident to homestead in land, and for the further reason that it appeared the execution was for taxes due the city of Charleston. He held that the deceased sheriff did nothing beyond what the execution required him to do as a matter of official duty. The plaintiff appeals to this court upon the grounds. 1. "Because the plaintiff was entitled to a homestead in the personalty levied upon, as being the head of a family. 2. Because the press and types were 'tools' of trade, in accordance with the constitutional exemption."

We do not clearly see how the original action against Alonzo J. White for a tort, alleged to have been committed by him, was revived against his administrator, Blake L. White, in view of the maxim " *quod actio personalis moritur cum persona.*" The code only provides for such continuance upon the death of the defendant " if the cause of action survive or continue; " but as there probably was some good reason for it, we will consider the case, which must be controlled by the law as it stood before the amendment of the constitution in 1880 in regard to homestead.

We do not understand that this court has ever declared unconstitutional the act of 1870, " to further determine and perpetuate the homestead." 14 *Stat.* 380. That act provided that " whenever the personal property of the head of any family is taken

or attached by virtue of any mesne or final process issued from any court, and said person shall claim the said property, or any part thereof, as exempt from attachment by the provisions of section 32, Article II. of the constitution, whether the said person owns a homestead of real estate or not, it shall be the duty of the officer executing the said process to cause to be laid off and appraised, such property as the said person may select, consisting of such articles as are enumerated in the constitution, &c.

The precise question of the constitutionality of this act has never before arisen in this court; but other questions have been decided here connected with that act; indeed, based upon it, which, therefore, incidentally, at least, affirmed the validity of the act. The following cases have recognized the act. *Prince v. Nance,* 7 *S. C.* 351. In this case the plaintiff sued the defendant for rent in arrear, and attached part of his crop, cotton in the seed, &c. He moved to set aside the attachment on the ground that he was entitled to an exemption of one-third of his crop under the act of 1873, 15 *Stat.* 373. It did not appear that the defendant owned any land. The court held that, being the head of a family, he was not entitled to the exemption under the act, but was remitted to his right under the homestead provision of the constitution, which excluded the right as to rent, "an obligation contracted in the production of the crop." The court said: " The express object of section 9 of the act above mentioned is to secure exemption in the nature of a homestead of one-third of the yearly ' products or earnings ' to every person not the head of a family, and not to persons who are heads of families, as they have the right to homestead exemption, in a proper case, by laying claim thereto as provided by law."

*Duncan v. Barnett,* 11 *S. C.* 333. This was a rule upon the sheriff because he had not sold under an execution certain personal property, viz., two bales of cotton, seed cotton and corn. The only question was whether the subsequent attempt to add to the list of articles exempted, " one-third of the annual product of agricultural laborers " by the act of 1873, was consistent with the provisions of the constitutional enactment. It was not whether the head of a family

without land was entitled to an exemption of personal property, but whether the particular articles fell within the category of those enumerated in the constitution. It did not appear that the defendant in the execution had or claimed any homestead in land, and yet it was assumed that if the articles levied had been such as are named in the constitution, there would have been no question about it.

*Pender* v. *Lancaster*, 14 *S. C.* 28. The question in this case was whether a person who married and became the head of a family after an execution against him had been levied on a horse, was entitled to claim the horse as exempted under the constitution, notwithstanding the previous levy. It did not appear that the defendant owned any land, and yet it was taken for granted that he was entitled to the exemption, unless he had lost the right by the levy before his marriage. In delivering the judgment of the court, Chief Justice Willard distinctly recognized the exemption of personal property as a matter entirely independent of homestead in land, for he said: "The right to the homestead, and that to the exemption of personal property of the prescribed kinds, must be regarded as of the same nature and attended by the same general incidents, as they are both created by the same instrument for the accomplishment of the same purpose, and only differ in the respect that one relates to real and the other to personal property."

We must, therefore, conclude that the Supreme Court has never declared unconstitutional the act of 1870, before referred to, but, on the contrary, at different times and in various ways has recognized it, and incidentally, at least, affirmed its legality and validity. It follows that when the levy was made upon the property of the defendant, Oliver, he was not excluded from claiming the exemption of his personal property, although he owned no land and had no homestead therein, provided the articles of property were such as are enumerated in the constitution.

Assuming that Oliver had the right to claim the constitutional exemption in personal property, although he owned no land, were the type, press and other printing material such personal property as fall within those enumerated in the constitution? The articles enumerated in the constitution are, "household fur-

niture, beds and bedding, family library, arms, carts and wagons, farming implements, tools, neat cattle, work animals, swine, goats and sheep, not to exceed in value, in the aggregate, the sum of $500." The press and type cannot possibly fall under any class named, except it may be that of "tools." Does that word naturally and properly embrace press, type and printing material? The word "tool" is defined to be "An instrument of manual operation, particularly such as are used by farmers and mechanics."

It seems to have been held, in Iowa, that it embraces printing press, type and other material, but that the contrary has been held in Massachusetts. *Buckingham* v. *Billings,* 13 *Mass.* 82; *Dunford* v. *Woodman,* 10 *Pick.* 426. It is not perfectly clear, but we are inclined to agree with Judge Wilde, who, in delivering the judgment in the last case cited, said: "The word 'tool' is not understood, either in its strict meaning or popular use, as designating complicated machinery, which, in order to produce any useful effect, must be worked by combining several distinct parts or separate pieces, the aid of more hands than one being necessary to perform the operation, all which is required in a printing apparatus. Nor can the several parts be denominated 'tools,' as they cannot be used separately, but, like the ax and its handle, must be united to accomplish any work. The press and forms may, with as much propriety, be denominated 'tools' as the types. All are the necessary component parts of the machinery for printing. Besides, types cannot be used as tools of trade by a printer, after he is stripped of the other parts of his printing apparatus, so that the exemption from attachment of the types alone would not enable him to pursue his trade and thereby gain his subsistence, which was the object of the statute."

But without regard to this question, the fact that the execution was for taxes was certainly enough to protect the sheriff. It is true, the certificate required by the act of 1868 was not endorsed on the process, but that requirement was for the purpose of simplifying the proof of the fact, and upon a question whether the execution was issued upon a claim for taxes, that

omission would be evidence against the plaintiff in the execution, as in the case of *Agnew* v. *Adams*, 15 *S. C.* 36, cited in argument, but when once the fact appeared that the judgment was rendered upon a claim for taxes, we suppose that the plaintiff's omission to have the certificate endorsed by the court could not exclude the sheriff from the protection of the constitutional provision, which in itself has no such requirement.

Besides, the act itself seems to contemplate that the claim for homestead shall be made after levy. The words are, " whenever the personal property of the head of any family is taken or attached," &c. The sheriff is a ministerial officer, and has no right to consider and determine the question of homestead. The process in his hands is a mandate to make the money. If he sells or removes property, subject to homestead, he is liable to be indicted under the act " to punish sheriffs and other officers for violating the homestead" (14 *Stat.* 172); but it would seem that there is no prohibition against simply making a levy, which the sheriff being commanded to make, is the usual preliminary step to the claim of homestead upon the part of the defendant in execution. The constitution only gives the right to demand homestead, and it is necessary for the claimant to set it up and establish it as in regard to any other right. *Pender* v. *Lancaster, supra.*

The judgment of this court is that the judgment of the Circuit Court be affirmed.